**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 1:11-cv-00631-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| STEVEN CASTANON SORONDO, individually and dba THE LAMP POST BAR; STARDEN, INC., an unknown business entity dba THE LAMP POST BAR, | (Docket No. 13) |
| | **OBJECTIONS DUE WITHIN 15 DAYS** |
| Defendants. | |
| _____ / | |

**I.  INTRODUCTION**

On August 8, 2011, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed the present motion for default judgment against Defendants Steven Castanon Sorondo, individually and dba The Lamp Post Bar, and Starden, Inc., an unknown business entity dba The Lamp Post Bar ("Defendants"). (Doc. 13.)  The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Pursuant to Local Rule 230(g), the Court finds this matter is suitable for decision without a hearing; the hearing set for September 14, 2011, is VACATED and the motion is submitted upon the record.  For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.

1

## II.  FACTUAL BACKGROUND

Plaintiff filed this civil action on April 20, 2011.  (Doc. 1.)  The complaint alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of California Business and Professions Code section 17200, *et. seq*.  The suit is based on Defendants' alleged unlawful interception, receipt, and exhibition of "*World Extreme Cagefighting: Jose Aldo v. Urijah Faber*" (the "Program"), including all under-card bouts and fight commentary, that was telecast nationwide on April 24, 2010.  (Doc. 1, ¶¶ 10, 13.)  According to the complaint, Plaintiff was the exclusive commercial distributor of the Program.  (Doc. 1, ¶ 10.)

Count I of the complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendants knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain.  (Doc. 1, ¶¶ 9-18.)  Plaintiff seeks $100,000 in statutory damages as well as attorney's fees and costs.  (Doc. 1, ¶ 18.)  Count II alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations.  (Doc. 1, ¶¶ 19-23.)  Plaintiff requests $50,000 in statutory damages, as well as attorney's fees and costs.  (Doc. 1, ¶ 23.)  Count III states a claim for conversion alleging that Defendants tortiously obtained possession of the Program and wrongfully converted it for their own benefit.  (Doc. 1, ¶¶ 24-27.)  As to Count III, Plaintiff seeks compensatory damages, exemplary damages and punitive damages.  (Doc. 1, ¶ 26.)  Count IV of the complaint alleges a violation of California Business & Professions Code § 17200, *et. seq*.  (Doc. 1, ¶¶ 28-37.)  As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorney's fees, and costs of suit.  (Doc. 1, ¶¶ 36-37.)

On July 7, 2011, the summonses as to Steven Castanon Sorondo and Starden, Inc. were returned showing that service of the summonses and complaint was effected on June 7, 2011.  (Docs. 5, 6.)   Neither Defendant filed a response to the complaint, and on July 15, 2011, pursuant to Plaintiff's request, the Clerk entered default against Defendants.  (Doc. 11.)  On August 8, 2011, Plaintiff filed this motion for default judgment against Defendants.  (Doc. 13.)  Defendants did not oppose the motion.

**III. DISCUSSION**

**A.      Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> (A)      conduct an accounting;
> (B)      determine the amount of damages;
> (C)      establish the truth of any allegation by evidence; or
> (D)      investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include:  (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.      Analysis**

Service of the summonses and complaint in this action was effected on June 7, 2011.  Copies of the Proofs of Service were filed with this Court on July 7, 2011.  (Docs. 5, 6.)  Defendants failed to respond to the complaint or otherwise appear in the action.  The Clerk of the Court entered default against Defendants on July 19, 2011.  Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  (Doc. 13-2, ¶ 3.)

In its motion, Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced

statutory damages) in the amount of $110,000 against Defendants for unlawfully intercepting, receiving, and exhibiting the Program on April 24, 2010.  Plaintiff also seeks damages in the amount of $900 for its state law conversion claim.

      **1.**        **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii).  (Doc. 13-1, 6:14-14:15.)  Pursuant to Section 605(a), "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception. . . ."  Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[1] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program.  (Doc. 13-4, ¶ 3.)  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers.  (*Id*.)  Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually.  (*Id*. at ¶ 12.)  Plaintiff believes that the continued signal piracy is caused, in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates.  (*Id*.)  As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

---

[1] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distributed any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming.  Plaintiff does not assert that Paragraph 4 is applicable in this case.

1    Plaintiff contends that significant enhanced statutory damages should be awarded under

2  Section 605(e)(3)(C)(ii) because Defendants' actions were willful and done for a commercial

3  advantage.   Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was

4  committed willfully and for purposes of direct or indirect commercial advantage or private financial

5  gain, the court in its discretion may increase the award of damages, whether actual or statutory, by

6  an amount of not more than $100,000 for each violation of subsection (a) of this section."  Plaintiff

7  also asserts that Defendants are repeat offenders, as another suit for signal piracy is pending against

8  them in this district, and this too warrants significant enhanced statutory damages.  (Doc. 13-5.)

9  Emphasizing the need for deterrence as to these Defendants and others, Plaintiff requests that it be

10  awarded $100,000 in enhanced statutory damages.

11    Here, the summons and the complaint were properly served upon Defendants, their defaults

12  were properly entered, and the complaint is sufficiently well-pled.  *See Eitel*, 782 F.2d at 1471-72.

13  By default, Defendants admitted to willfully violating Section 605 for the purposes of commercial

14  advantage.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  The facts before the Court indicate that

15  Defendants' establishment had an approximate capacity of 50 people.  (Doc. 13-3.)  Dominique

16  Vargas, Plaintiff's investigator, noted that there were three television sets in the establishment on

17  the night the Program was broadcast: two 36-inch flat screen televisions and one television was

18  mounted on the wall at the end of the bar.  (*Id*.)  Vargas conducted three head-counts, with twenty

19  people in the first count, twenty-five people in the second count, and twenty-five people in the last

20  count.  (*Id.*)

21    The amount of damages awarded should be in an amount that is adequate to deter these

22  Defendants and others from committing similar acts in the future.  Therefore, the Court recommends

23  that the   maximum   allowable   statutory   damages   be   awarded   pursuant   to   47   U.S.C.

24  § 605(e)(3)(C)(i)(II) in the amount of $10,000.

25    With regard to enhanced statutory damages, several factors weigh against a substantial

26  amount of enhanced statutory damages.  There is no evidence that Defendants (1) advertised the

27  broadcast of the Program to entice a larger crowd, (2) charged a cover to enter the establishment, or

28  (3) charged a premium for food and drinks on the night the broadcast was shown.  Further, the

1 headcounts during the Program indicate approximately twenty-five people were present in the

2 establishment. (Doc. 13-3.) Moreover, there is no evidence that Defendants' resources are such that

3 a large award of enhanced damages is necessary for deterrence.

4      Plaintiff contends that the courts have placed undue weight on the promotion of the program

5 rather than the exhibition of the program, arguing that pirates do not generally advertise that they will

6 exhibit programming unlawfully, increase the price of food and drinks, or charge a cover so as to

7 undercut establishments who do broadcast the program lawfully. (Doc. 12-4, ¶¶ 14-17.) The Court

8 finds that there is an impact based on Defendants' conduct and some amount of enhanced damages

9 should be awarded to produce the appropriate deterrent effect.

10      The Court is also mindful that minimal damage awards may result in a perceived lack of

11 consequences for signal piracy. (*See* Doc. 13-4, ¶¶ 11-13.) Additionally, Defendants appear to be

12 repeat offenders who are being sued for other acts of piracy in a separate case pending before the

13 Eastern District. (Doc. 13-5); *see J & J Sports Productions, Inc. v. Sorondo*, *et al.*, 1:11-cv-00411-

14 AWI-SMS ("*Sorondo*"). In *Sorondo*, 1:11-cv-00411-AWI-SMS, Defendants are being sued by

15 J & J Sports Productions, Inc. for wrongful exhibition of "*The Event*"*: The Manny Pacquiao v.*

16 *Joshua Clottey, WBO Welterweight Championship Fight Program*, which was telecast on March 13,

17 2010. *Sorondo*, 1:11-cv-00411-AWI-SMS, at Doc. 1, ¶ 10. A motion for default judgment is

18 pending in that matter, as Defendants have not responded to the complaint and their defaults have

19 been entered. *Sorondo*, 1:11-cv-00411-AWI-SMS. Weighing all of the factors discussed above, the

20 Court recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii)

21 in the amount of $2,000.

22     **2.    Damages for Conversion**

23      Plaintiff seeks $900 in conversion damages – the value of the property at the time of the

24 conversion. Under California law, conversion is the wrongful exercise of dominion over the

25 property of another. The elements of conversion are, "the plaintiff's ownership or right to possession

26 of the property at the time of the conversion; the defendant's conversion by a wrongful act or

27 disposition of property rights; and damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th

28 1572, 1581 (2005); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d

896, 906 (9th Cir. 1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."  *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009).   Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law.)

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the Program, and thus had the right to possess the property at the time of the conversion.  Because Defendants did not legally purchase the Program, the exhibition of the fight on April 24, 2010, constituted conversion by a wrongful act or disposition of property rights.  Finally, the rate card[2] for the Program at an establishment with a seating capacity between zero and fifty, which would apply to Defendant's establishment, indicates the sub-license fee for the Program would have been $900. (Doc. 13-4, ¶ 8, Exh. 1.)   Thus, Plaintiff is entitled to damages for conversion in the amount of $900.

## IV.  RECOMMENDATIONS

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED;

2. Judgment be entered in this action against Defendants Steven Castanon Sorondo, individually and dba The Lamp Post Bar, and Starden, Inc. dba The Lamp Post Bar as follows:

   a. $10,000 statutory damages for violation of 47 U.S.C. § 605;

---

[2] The rate card indicates the amount Plaintiff charges an establishment to sub-license and purchase the broadcast the Program.  (Doc. 13-4, ¶ 8, Exh. 1.)   The rates charged are based upon the capacity of the establishment.  In this instance, for an establishment with a capacity of 0-50 people, the rate to sub-license and broadcast the Program is $900. (*Id.*)

b.       $ 2,000 enhanced statutory damages for violation of 47 U.S.C. § 605; and

c.       $900 for the tort of conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    September 9, 2011**                              /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE